IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHARLES WALKER,

                                               OPINION AND ORDER

                    Plaintiff,

                                             19-cv-309-bbc

         v.

ANDREW POHL,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Charles Walker is proceeding on a claim that defendant Andrew Pohl violated his rights under the Eighth Amendment by using excessive force on plaintiff while he was escorting back to his cell. Now before the court is defendant's motion for summary judgment. Dkt. #18. (I have amended the caption of the complaint to reflect defendant's full name.). For the reasons explained below, I am granting defendant's motion and closing this case.

Although plaintiff included a statement of facts in the brief he filed in response to defendant's motion for summary judgment and responded to defendant's proposed findings of fact, he did not file an affidavit or sworn statement, present any other admissible evidence or file any proposed findings of fact of his own to support his claims. Because plaintiff's brief referred to statements made in his sworn complaint, defendant has treated those statements as proposed findings of fact and responded to them.

This court's summary judgment procedures, which were attached to the November 13, 2019 preliminary pretrial conference order entered in this case, dkt. #15, warn litigants that "[u]nless the responding party puts into dispute a fact proposed by the moving party,

1

the court will conclude that the fact is undisputed."  Proc. to be Followed on Motions for Summ. Judg., § II.C. at p. 6.  The procedures also instruct parties that "[a]ll facts necessary to sustain a party's position on a motion for summary judgment must be explicitly proposed as findings of fact," and "[t]he court will not search the record for factual evidence.  Even if there is evidence in the record to support your position on summary judgment, if you do not propose a finding of fact with the proper citation, the court will not consider that evidence when deciding the motion.  Your brief is the place to make your legal argument, not to restate the facts."  Id. at p. 1.

The Court of Appeals for the Seventh Circuit "has routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." Abraham v. Washington Group International, Inc., 766 F.3d 735, 737 (7th Cir. 2014).  See also Schmidt v. Eagle Waste & Recycling, Inc., 599 F.3d 626, 630-31 (7th Cir. 2010) (holding that the district court did not err when it deemed the defendant's proposed findings of fact admitted and refused to consider additional facts for the plaintiff's failure to follow the local procedures on proposed findings of fact).  Therefore, in accordance with this court's summary judgment procedures, I have considered as undisputed any facts proposed by defendant that are supported properly and sufficiently by admissible evidence.   Like defendant, I also have considered plaintiff's sworn statements from his complaint.

From the defendant's proposed findings of fact, plaintiff's sworn statements and the video footage from a hallway security camera and a body camera worn by defendant, I find

the following facts to be undisputed unless otherwise noted.  See Scott v. Harris, 550 U.S.

372, 380-81 (2007) (court should view facts in light depicted by videotape).

## UNDISPUTED FACTS

### A.  The Parties

Plaintiff Charles Walker is currently incarcerated at the Waupun Correctional Institution, where defendant Andrew Pohl worked as a correctional officer.  As a correctional officer, defendant's duties included supporting the unit staff, maintaining the security of the institution, maintaining the safety of inmates on his unit and performing general tasks within the various housing units.

Defendant received regular training and education related to his position as security staff at the institution.  This training included training on how to avoid an inmate assault on himself, other staff or other inmates; training on the appropriate use of force; training on the principles of subject control; and training on various provisions of the Wisconsin Administrative Code.

### B.  Institutional and Escort Security

Waupun is a maximum-security institution.  Many inmates in the restrictive housing unit have behavioral, disciplinary or mental health problems.  To maintain safety and security, the institution requires inmates to be escorted to and from their cells in restraints and by an officer using a "hands-on escort hold."  If the inmate is compliant, the officer uses

a "hands-on compression hold," during which the officer places one hand on an inmate's elbow and one hand over the outside of an inmate's hand.  This hold allows the officer to move the inmate rapidly while maintaining control.  A hands-on compression hold does not include pressure applied to the hands or wrists.  If an inmate fails to follow commands or resists, then a "compliance hold" is used.  In this hold, an officer seeks to bring an inmate into compliance by applying pressure to the wrist while giving verbal directives.

To insure compliance, inmates are instructed to always remain facing forward during an escort.  The Restrictive Housing Unit Handbook, which is given to all inmates when they enter the unit, instructs inmates to face forward:  "During the escort, you will be expected to remain facing forward at all times and to follow staff directives."  All inmates must sign an acknowledgment confirming that they received a copy of the handbook and will follow the unit's rules.  Plaintiff signed this acknowledgment on September 5, 2018.

The policy requiring inmates to face forward during an escort is meant to minimize the opportunity for the inmate to spit on or make physical contact with the staff.  For example, despite being handcuffed, the inmate could headbutt or elbow the staff.  Also, an inmate who is facing forward cannot "target glance" an officer to learn the officer's location and make a subsequent attack more direct and effective.

## C.  The September 10, 2018 Escort

Defendant worked second shift (2:00 p.m. to 10:00 p.m.) in the restrictive housing unit on September 10, 2018.  That day, he escorted plaintiff from the recreation area to his

cell.  Plaintiff's wrists were restrained with handcuffs behind his back.  Defendant had one hand on plaintiff's upper bicep during the escort.

During the escort, plaintiff turned his head to talk to other inmates.  Defendant loudly directed plaintiff to face forward, while also gesturing with his hand for plaintiff to face forward.  Plaintiff then turned his head toward defendant.  The security camera video shows that this happened three times.  (Plaintiff says that he turned his head because he did not hear the directive and asked defendant to repeat himself, but defendant says that he interpreted the act as a threat to his safety.)  Defendant again loudly directed plaintiff to face forward and gestured with his hand to face forward.

While turning his head toward defendant, plaintiff began to argue with defendant about the directive to face forward, saying that he was facing forward.  Defendant then used his body weight to secure plaintiff to the wall.  Specifically, defendant used his hands to secure plaintiff's right bicep and his shoulder to press against plaintiff's back to prevent him from moving while defendant waited for additional staff to arrive.  Although plaintiff says that defendant used his forearm and elbow to press on the back of plaintiff's neck, the security camera video does not show this.  The body camera video shows that plaintiff continued to question and argue with defendant while he was secured against the wall.

To defendant, plaintiff appeared to become increasingly agitated—he started to argue and raised his tone of voice.  Defendant felt threatened and took what he believed were the necessary acts to bring plaintiff under control as quickly and safely as possible.  Correctional Officers Joshua Adderton and Josh Bleiler were nearby and quickly rushed over to assist

defendant.  Once additional officers and a supervisor arrived, staff placed plaintiff in leg restraints.  Defendant and others then escorted plaintiff to a strip search cell, and once there, defendant disengaged from the situation.

Both video recordings of the incident confirm the facts set out above and do not show defendant touching plaintiff's neck in any way or trying to break plaintiff's wrist or otherwise apply unnecessary pressure to plaintiff's wrist during the escort to the strip search cell.  (Plaintiff's wrists are not visible during the initial escort and placement against the wall.)  While escorting plaintiff to the strip search cell, both officers have their hands over plaintiff's hands in a compression hold, but they are not applying any pressure.  During the entire incident, plaintiff never made any statements about his wrists, about being in any kind of pain or about not being able to breathe.  Plaintiff did not make any other vocal or physical indications of being in distress.

### D.  The Investigation

In early October 2018, Warden Brian Foster assigned Anthony Ashworth to investigate defendant's use of force against plaintiff.  (At that time, Ashworth was a corrections program supervisor of the restrictive housing unit at Waupun.)  During the investigation, plaintiff claimed that defendant used excessive force when he slammed plaintiff's face against the wall and tried to break plaintiff's wrist while escorting him to his cell.  Ashworth tried to speak with plaintiff about his allegations, but he refused to come out

of his cell to be interviewed.  Ashworth interviewed defendant and the other two officers who witnessed the incident:  Adderton and Bleiler.

Ashworth prepared a summary of his investigation, which was sent to Warden Foster for final disposition.  In the report, Ashworth noted that the body camera footage supported defendant's version of events.  Specifically, the body camera footage confirmed that defendant gave three directives to plaintiff to face forward, but plaintiff refused to do so.  The body camera footage also confirmed that defendant then stabilized plaintiff against the wall.  Ashworth highlighted several statements defendant made, including that defendant believed his actions were reasonable and necessary because he felt threatened by plaintiff's behavior.

Defendant did have less forceful options than the one he elected to use.  Ashworth wrote in his summary:  "Officers have the ability and discretion to use the amount of force they believe is reasonable and necessary to stop an inmate activity.  In this matter it is reasonable to believe that there were multiple options for Officer Pohl to consider prior to forcefully directing Inmate Plaintiff into the vertical surface."  Some of those additional safety measures could have included asking a second officer for assistance, applying a spit mask to the inmate or requesting the presence of a supervisor.  Defendant also could have turned plaintiff toward a vertical surface and called for additional staff, an option similar but less forceful than the one defendant used.  Because defendant had been spat on before and knew of instances where inmates had head butted staff, Ashworth believed it was reasonable for defendant to interpret plaintiff's target glance, head turning and non-compliant behavior

7

as a threat.  Defendant did not receive any discipline as a result of the investigation into the incident.

## OPINION

To prevail on an Eighth Amendment excessive force claim, a convicted prisoner must prove that the offending officer applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).  The factors relevant to this determination include: (1) why force was needed; (2) how much force was used; (3) the extent of the injury inflicted; (4) whether the defendant perceived a threat to the safety of staff and prisoners; and (5) whether efforts were made to temper the severity of the force.  Whitley, 475 U.S. at 321.  For a case to go to a jury, the evidence must show more than a mere dispute over the existence of alternatives; it must "support a reliable inference of wantonness in the infliction of pain." Id. at 323.  See also Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004) (citing same) (at summary judgment plaintiff must present evidence to "support a reliable inference of wantonness in the infliction of pain").  The undisputed facts and the video and audio recordings of the incident show that defendant's actions came nowhere close to meeting this standard.

It is undisputed that while defendant was escorting plaintiff back to his cell, plaintiff turned his head to talk to other inmates, in violation of a prison policy designed to maintain

safety and order within the prison.  In response, defendant loudly directed plaintiff to face forward, while also gesturing with his hand for plaintiff to face forward.  It is further undisputed and the video footage shows that plaintiff further violated the prison escort policy by turning his head multiple times toward defendant, even as defendant loudly directed plaintiff to face forward.  Although plaintiff says that he was trying to ask defendant what defendant had said to him, he does not deny turning his head.  The undisputed facts and video footage show that defendant responded to plaintiff's non-compliance by putting him up against the wall and using his body weight to secure plaintiff to the wall.  Defendant used his hands to secure plaintiff's right biceps and his shoulder to press against plaintiff's back to prevent him from moving while defendant waited for additional staff to arrive.

Plaintiff contends that defendant used excessive force during this process by ramming plaintiff's face into the wall and using his forearm and elbow to press on the back of plaintiff's neck, which prevented plaintiff from breathing for 45 to 60 seconds.   However, a reasonable jury viewing the video could not conclude that defendant "rammed" plaintiff's face into the wall in a malicious manner or had any contact with his neck.  Although there is an audible thud on the body camera video when defendant turns and presses plaintiff against the wall, both videos show that defendant's movements were brief and controlled. He did not shove or slam plaintiff.  Although the side of plaintiff's face is initially pressed against the wall, his face does remain pressed against the wall while defendant waits for other officers to assist him.  Moreover, plaintiff is talking to defendant throughout the incident

9

and never says that he is hurt or cannot breathe.  There is no evidence that plaintiff sought or received treatment for any injury resulting from the restraint.

Plaintiff also contends that defendant tried to break his handcuffed wrists by bending them in a painful manner.  Plaintiff's wrists are not visible on either video during the initial part of the incident but are in full view when plaintiff is being escorted to the strip cell. Although "[i]nitially it may appear as though this fact dispute would preclude summary judgment," summary judgment is "improper only if a jury reasonably could find excessive force based on [plaintiff's] assertions."  Boyd v. Pollard, 621 Fed. Appx. 352, 355-56 (7th Cir. 2015) (citing Cyrus v. Town of Mukwonago, 624 F.3d 856, 862 (7th Cir. 2010) ("[S]ummary judgment is often inappropriate in excessive force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations.")).

Although Boyd is an unpublished opinion, it involves facts similar to those in Cyrus, 624 F.3d 865, and is instructive in this case.  Demetrious Boyd alleged that guards used excessive force during a cell extraction when they body slammed him onto a concrete floor, placed him in a chokehold and hit him in the face and head.  Id. at 354.  However, the defendant guard denied the allegations and a video confirmed most of the defendant's account, except for brief times when Boyd was out of camera view.  Id.  Recognizing that the video was inconclusive and that the parties had presented different versions of the events, the court of appeals nonetheless determined "that no juror who viewed the video could reasonably conclude—given the professional behavior of the guards and minor injury

sustained by Boyd—that the guards, when outside the camera's view, attacked Boyd." Id. at 356. The same is true in this case.

The evidence shows that plaintiff never complained about his wrists or about being in pain and the film does not exhibit any visible signs of distress during the incident. It is entirely possible that plaintiff felt pressure on his wrists. However, as the Court of Appeals for the Seventh Circuit has explained, "[c]ustodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority (that's how the prisoners came to be there, after all) is to be manageable." Guitron v. Paul, 675 F.3d 1044, 1046 (7th Cir. 2012). "Even if 'it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable,' an error of judgment does not convert a prison security measure into a constitutional violation." Id. (quoting Whitley, 475 U.S. at 319).

More importantly, plaintiff has not presented convincing evidence to corroborate his contention that defendant intended to cause him harm. Plaintiff alleges in his sworn complaint that defendant "threatened" him at some point during the escort, but he does not say what defendant said or did to him. He also says, without alleging any facts to support his argument, that defendant admitted cursing during the incident. However, nothing in the video footage shows that defendant threatened or acted aggressively toward plaintiff. Defendant's voice remains controlled throughout, even when plaintiff begins arguing with him. Plaintiff challenges the accuracy of the body camera video, saying that radio chatter prevented defendant's words from being clearly recorded. However, plaintiff does not have

11

any evidence to substantiate his allegation.  Even with other sounds in background, the audio recording of defendant's voice is clear and reveals that defendant repeatedly issued a directive for plaintiff to face forward.

Defendant's behavior and demeanor are relevant to the question whether he applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." Hudson, 503 U.S. at 6-7.  However, no juror who viewed the video footage in this case could reasonably conclude that defendant was trying to cause plaintiff harm rather than to restore order.  Regardless of plaintiff's vague allegations that defendant threatened him and cursed, the video footage makes it clear that defendant acted in a calm and controlled manner and provided ample opportunity for plaintiff to comply with his orders before securing him against the wall.  A reasonable jury would conclude that plaintiff's behavior in this case justified the measures taken by defendant.

Finally, plaintiff states that defendant has a history of excessive force grievances against him.  However, past lawsuits and grievances are inadmissible as improper bad acts evidence under Rule 404(b)(1) of the Federal Rules of Evidence, which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  In other words, plaintiff cannot use evidence of prior grievances against defendant to argue that defendant was the type of officer who used excessive force. Burton v. City of Zion, 901 F.3d 772, 783 (7th Cir. 2018).  Although Rule 404(b)(2) states that

12

other acts or wrongs may be admissible for other purposes, such as proving intent, plaintiff "must first establish that the other act is relevant to a specific purpose other than [defendant's] character or propensity to behave in a certain way." <u>United States v. Gomez</u>, 763 F.3d 845, 860 (7th Cir. 2014). Plaintiff has not made this showing. The information he submitted does not identify the facts, outcome or disposition of any of the grievances or lawsuits against defendant. Most important, none of the grievances appear to involve plaintiff at all.

In sum, plaintiff does not provide any compelling evidence from which a reasonable jury could conclude that defendant used force greater than necessary or acted maliciously for the purpose of causing plaintiff harm during the escort on September 18, 2018. Accordingly, defendant is entitled to summary judgment on plaintiff's excessive force claim.

ORDER

IT IS ORDERED that defendant Andrew Pohl's motion for summary judgment, dkt. #18, is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 30th day of November, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

13